FILED

12/11/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 2, 2017

## KIM COVARRUBIAS v. GERALD EDWARD BAKER

**Appeal from the Circuit Court for Knox County**
**No. 107966      Gregory S. McMillan, Judge**

_____

### No. E2016-02316-COA-R3-CV

_____

This appeal arises out Husband's petition to reduce his alimony in futuro obligation and Wife's motion for criminal contempt for Husband's failure to pay his alimony obligation in full. Wife opposed the modification of alimony on two grounds: (1) the 2007 Marital Settlement Agreement was not modifiable and (2) there had been no material change in circumstances. The trial court held that the alimony in futuro provision was modifiable and, based on a finding that Husband had proven a material change in circumstances, reduced Husband's alimony obligation. The court then calculated Husband's alimony arrearage for 2015 based on his income in 2007, not on his income as stated on his W-2 for 2015, which was greater. The court also dismissed the contempt petition upon a finding that Wife failed to prove the essential elements. Wife appeals, contending the trial court erred (1) by dismissing her motion for criminal contempt; (2) by finding that the trial court had the authority to modify alimony; (3) by finding that a substantial and material change in circumstances warranted a modification; and (4) by failing to properly calculate Husband's alimony arrearage for 2015. We have determined that the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes us from reviewing the trial court's decision to dismiss the contempt petition; therefore, we affirm the dismissal of the criminal contempt petition. As for Husband's petition to modify alimony in futuro, we affirm the trial court's determination that the alimony in futuro provision was modifiable; however, we have determined that there is no factual basis to support a finding that Husband proved a substantial and material change in circumstances. Accordingly, we reverse the trial court's decision to decrease Husband's alimony obligation and remand with instructions to reinstate the alimony award as stated in the final divorce decree. Because the alimony arrearage judgment was based on the reduced alimony obligation, we also reverse that award and remand with instructions for the trial court to award an arrearage judgment based on Husband's gross earnings in 2015, not his salary in 2007. Therefore, we affirm in part, reverse in part, and remand for recalculation of the alimony arrearage judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which THOMAS R. FRIERSON II and BRANDON O. GIBSON, JJ., joined.

Stephanie L. Prager and Shelley S. Breeding, Knoxville, Tennessee, for the appellant, Kim Covarrubias.

J. Patrick Henry, Kingston, Tennessee, for the appellee, Gerald Edward Baker.

**OPINION**

On October 22, 2007, the Knox County Circuit Court granted a divorce to Kim Covarrubias ("Wife") and Gerald Edward Baker ("Husband") after twenty-two years of marriage. The parties' Marital Settlement Agreement, which was incorporated into the divorce decree, provided that Husband would pay Wife fifty percent of his gross income as alimony "until either party is deceased."

On the same day the divorce decree was entered, a separate and agreed upon Order for Alimony in Futuro was entered, which stated that Husband would pay Wife "on the 15th and 30th of each month, the sum of ½ of all his gross earnings…and continuing thereafter the sum of ½ all bonuses as they are accumulated." The order provided that the remarriage of either party would not terminate Husband's obligation to pay alimony, and it stated that Wife could modify the alimony award due to "unforeseen circumstances."

In May 2015, Husband filed a petition to terminate or modify his alimony obligation, claiming that his income of $120,000 per year had not increased since the time of the divorce. He also claimed that since his income had not "kept up with the cost of inflation," he had difficulty maintaining his standard of living. Husband additionally claimed that he could not afford to buy a home or to pay his bills, and he owed approximately $19,000 in taxes while Wife was now making twenty dollars per hour, had a good credit rating, and was able to purchase a home. Wife filed an answer opposing any modification of alimony and asserted a counterclaim for an arrearage judgment for alimony that Husband failed to pay in 2015. She also filed a motion for criminal contempt. In her motion for contempt, Wife alleged that Husband failed to disclose income to Wife and paid Wife less than he owed under the divorce decree.

The court held a hearing on July 12, 2016, on Husband's petition to modify alimony and Wife's motion for criminal contempt where both Husband and Wife testified. At the hearing, Wife argued that Husband could not seek a modification of alimony from the court because the Order for Alimony in Futuro did not merge into the final divorce decree.

The trial court ruled that the Order for Alimony in Futuro merged into the final divorce decree and thus became modifiable by the court. After considering the testimony and the other evidence presented at the hearing, the court found that a substantial and material change in circumstances warranted a modification of Husband's alimony obligation:

[T]he Court finds that there has been a substantial and material change in circumstances unanticipated by the parties. The Court finds that one of those is [Husband's] loss of the Marital residence and his injury in 2008. It was anticipated in 2007 that [Husband] would continue to gain equity in the house. The Court also finds that it's significant that the Wife is helping to provide for an adult son and daughter and her grandchildren. The daughter receives $300 per month in child support and the son pays his groceries and works as a plumber. That was not anticipated by the Parties. The daughter has OCD and Picking [Disorder], and that makes work difficult for her. It is the testimony of the Wife that if the daughter were to work, her income wouldn't cover the cost of daycare.

The court considered the relevant factors in Tenn. Code Ann. § 36-5-121, finding that the parties' relative earning capacity and resources remained the same since the divorce and that neither party had accumulated substantial separate assets. The court found that Husband's income had increased from $120,000 per year at the time of the divorce to $158,000 per year in 2015, while Wife's remained the same. The court then determined that alimony should be reduced to $3,500 per month effective January 1, 2016, stating, "The reason this modification is later than the day of filing is that [Husband's] dealings with [Wife] in 2015 were less than forthright in trying to negotiate a decrease in alimony when he knew that he had received an increase in salary…."

The court found that Husband owed Wife $3,440 in unpaid alimony after giving Husband credit for overpayments since the modification's effective date. While the court found that Husband was "less than forthright" with Wife about his income and failed to completely fulfill his alimony obligation under the divorce decree, it ruled that the evidence was insufficient to prove that Husband was guilty of criminal contempt. Wife filed this appeal.

ISSUES

In this appeal, Wife asks us to consider whether the trial court erred (1) in dismissing Wife's motion for criminal contempt; (2) in finding that it had the authority to modify the parties' agreement for alimony; (3) in finding that a substantial and material change in circumstances existed which warranted a reduction in Husband's alimony

obligation; and (4) in failing to properly calculate Husband's arrearage in alimony payments.

## ANALYSIS

### I. CRIMINAL CONTEMPT

Wife argues that the trial court erred by dismissing her motion for criminal contempt because the trial court found that Husband was not forthright with Wife about his salary increase and that Husband failed to fulfill his alimony obligation to Wife on several occasions. Husband argues that Wife did not prove beyond a reasonable doubt that Husband was guilty of criminal contempt and that the double jeopardy clause of the Fifth Amendment to the United States Constitution precludes this court from considering the issue. We agree with Husband.

"Although contempt proceedings are traditionally classified as 'civil' or 'criminal,' in point of fact, contempt proceedings are neither wholly civil nor criminal in nature and may partake of the characteristics of both." *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013). Because criminal contempt has both civil and criminal elements, defendants in criminal contempt proceedings are afforded some, but not all, of the same constitutional protections as criminal defendants. *Id.* at 436. Our Supreme Court has held that the double jeopardy clause of the Fifth Amendment to the U.S. Constitution is one of the protections afforded to defendants in criminal contempt proceedings. *Ahern v. Ahern*, 15 S.W.3d 73, 80 (Tenn. 2000). The double jeopardy clause "protects an accused against a second prosecution for the same offense after an acquittal, and multiple punishments for the same offense." *Id.* "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '[a] verdict of acquittal…could not be reviewed, on error or otherwise, without putting (a defendant) twice in jeopardy, and thereby violating the Constitution.'" *U.S. v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) (quoting *United States v. Ball*, 163 U.S. 662, 671 (1896)); *see Cansler v. Cansler*, No. E2008-01125-COA-R3-CV, 2010 WL 342652, at *7 (Tenn. Ct. App. Feb. 1, 2010).

In this case, the court held a trial on Wife's motion for criminal contempt where Wife and Husband presented evidence. Based on the evidence, the court determined that Wife did not meet her burden of proof. Because the trial court's dismissal functioned as an acquittal for the purposes of double jeopardy, we cannot review the trial court's decision without violating the Constitution.

### II. TRIAL COURT'S AUTHORITY TO MODIFY THE AGREEMENT

Since the trial court's determination that it had the authority to modify the alimony agreement involves contract interpretation, it is a matter of law, which we review de novo

with no presumption of correctness accorded to the trial court. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

A marital dissolution agreement (or Marital Settlement Agreement in this case) is a contract between a husband and a wife that merges into the final divorce decree when approved by the trial court. *Eberbach v. Eberbach*, No. M2014-01811-SC-R11-CV, 2017 WL 2255582, at *3 (Tenn. May 23, 2017). Once incorporated into the final decree, issues governed by statute, like alimony and child support, lose their contractual nature and become a judgment of the court. *Id.* As such, alimony and child support provisions are modifiable by the court in accordance with the applicable statutes. *Id.* Though aspects of the Marital Dissolution Agreement lose their contractual nature, the court interprets a marital dissolution agreement like any other contract. *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001).

Here, the final divorce decree states that "all of the terms and provisions of the Marital Settlement Agreement between the parties…which is attached to and incorporated by reference, are hereby approved and incorporated, merged into, and made part of this court order…." Accordingly, the Marital Settlement Agreement merged into the final divorce decree. The Marital Settlement Agreement provides that "Husband agrees to pay Wife 50% of his gross total income including, but not limited to, bonuses and salary," and it states that alimony "will continue until either party is deceased." Because this alimony provision merged into the final divorce decree, it was subject to modification by the court in accordance with the applicable statutes.

Wife argues that even if the Marital Settlement Agreement merged into the final divorce decree, the Order on Alimony in Futuro did not merge, and therefore, it retained its contractual nature, making it non-modifiable by the court. The Order on Alimony in Futuro does not contradict the alimony provision in the Marital Settlement Agreement. To the contrary, it simply reiterates that Husband will pay Wife fifty percent of his gross earnings, which includes bonus pay. It then specifies the days of the month that Husband must remit payment. Like the trial court, we do not find the differences between the Martial Settlement Agreement and the Order on Alimony in Futuro to be material. Thus, it is inconsequential in this case whether the Order on Alimony in Futuro merged into the final divorce decree because the Marital Settlement Agreement did. Therefore, the alimony agreement became modifiable by the court by virtue of the Marital Settlement Agreement.

Even so, Wife contends that the Order on Alimony in Futuro precludes Husband from seeking a modification of his alimony obligation. We disagree. The order states "that said [alimony] payments are subject to modification by [Wife] for unforeseen changes of circumstances that occur during the period of payments." The order does not state that *only* Wife may seek a modification, or that Husband may not seek a

modification. Therefore, the trial court did not err by holding that it had the authority to modify the alimony agreement upon Husband's request.

## III. MODIFICATION OF ALIMONY

Decisions regarding spousal support are generally within the discretion of the trial court, *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011), and discretionary decisions are reviewed pursuant to the "abuse of discretion" standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for that of the trial court. *Id*. Nevertheless, the abuse of discretion standard of review does not immunize a lower court's decision from any meaningful appellate scrutiny. *Id*.

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id*. at 524-25 (internal citations omitted).

Therefore, we shall review the trial court's decision to modify the alimony agreement to determine, where applicable, whether there is a factual basis for the decision in the record, whether the court properly identified and applied the applicable legal principles, and whether the decision is within the range of acceptable alternative dispositions. *Id*. at 524.

An award of alimony in futuro "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). A party seeking a modification of alimony in futuro has two significant hurdles to overcome. First, the petitioner must establish that there has been both a substantial and a material change in circumstances since the entry of the original support decree. *Bogan*, 60 S.W.3d at 727-728 (citing Tenn. Code Ann. § 36-5-101(a)(1)). A change in circumstances is "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *Bogan*, 60 S.W.3d at 728. A change in circumstances is "material" when the change occurred since the original alimony award, and the change was not within the contemplation of the parties at the time of the divorce. *Id.*

If the petitioner establishes that both a substantial and a material change in circumstances exists, then the petitioner must overcome the second hurdle—proving that he or she is entitled to a modification. For the petitioner to be entitled to a modification of his or her alimony obligation, the petitioner must establish the modification is justified based upon the same factors that are relevant to the initial award of alimony. *Id.* at 730. Those factors are found in Tenn. Code Ann. § 36-5-121(i) and include, *inter alia*, the relative earning capacity, financial resources, education, and separate assets of each of the parties.

Here, the trial court found that Husband's "loss of the Marital residence and his injury in 2008" constituted a substantial and material change in circumstances because it was unanticipated by the parties at the time of the divorce. However, the trial court made no factual findings that would show that Husband's injury in 2008 and the subsequent "loss" of the marital home substantially affected his ability to fulfill his alimony obligation. The court merely noted that Husband rents a home while Wife owns a home. There appears to be no testimony as to the nature of Husband's injury in 2008 and no testimony showing the level of financial hardship that resulted. Nor is there testimony explaining the circumstances surrounding the loss of Husband's home, whether through foreclosure or traditional sale.

The trial court acknowledged in its oral ruling that Husband made "intimations" in his testimony about "a serious medical condition" he suffered in 2008, and this caused him to lose his home. However, Husband gave no further explanation. In *Harris v. Harris*, No. W2003-02112-COA-R3-CV, 2004 WL 2607541, at *4 (Tenn. Ct. App. Nov. 16, 2004) this court determined that the husband's diagnosis of cancer did not constitute a substantial change in circumstances because "the evidence did not indicate that the cancer or the resulting surgery affected Husband's monthly income. Indeed, the evidence indicates that Husband has slightly more income now than he did. . . ."

We also find it significant that the trial court found that Husband's income increased from $120,000 per year in 2007, when the parties divorced, to $158,000 per

year in 2015. Moreover, this fact was undisputed because Husband's 2015 W-2 statement, which was admitted into evidence, confirmed it. To be specific, the 2015 W-2 established that Husband's gross income for 2015 was $158,967.05. Conversely, and significantly, it is undisputed that Wife's annual income of $41,000 per year remained the same.

Although the trial court found it "significant" that Wife financially supported the couple's adult daughter, adult son, and two grandchildren, the record reveals that she had been supporting them prior to the parties' divorce in 2007. Therefore, this circumstance cannot constitute a change that occurred after the divorce.

The fact that Wife owns a home while Husband had to sell his house and now rents a home fails, on its own, to support a finding that Husband no longer has the ability to pay alimony pursuant to the 2007 decree. Instead, and as this court reasoned in a factually similar case, "Husband's assertions that he struggles to pay his bills while Wife is able to maintain her standard of living shows only that Wife is better able to manage her funds." *Allen v. Allen*, No. W2007-02224-COA-R3-CV, 2008 WL 5169570, at *7 (Tenn. Ct. App. Dec. 10, 2008). Given the foregoing, we find no factual basis in the record that would support a finding that this change in circumstances was substantial.

Moreover, even if we were to find that the change in circumstances was substantial, the court's factual findings regarding the factors found in Tenn. Code Ann. § 36-5-121(i) do not support the court's decision to decrease Husband's alimony obligation. As to the relevant factors, the trial court made the following findings:

A) As far as relative earning capacity and resources neither one of them has any additional income at this point. The last W-2 from the Husband shows that he made $158,000 in 2015. The Wife made approximately $41,000. That was also approximately what she made during two or more of the years that the Parties were married.

B) There is no indication about the relative education and training. All we have is that [Husband] was employed making $120,000 when the Parties divorced and is making $158,000 now. The Wife has no education beyond High School and has not sought any since the divorce.

C) The duration of the marriage is irrelevant in post-divorce proceedings.

D) As far as the age and mental condition of the Parties, there has been no proof or indication regarding either of them being impaired by any current health condition.

E) As far as the physical condition of each Party, there has been no proof on that.

F) Neither Party has accumulated significant separate assets.

- 8 -

G) As far as the distribution of Marital Property, it is unknown to the Court. The Wife received some cash and the Husband received the Marital residence, which he lost in the years following the Divorce.

H) There was no testimony about the standards of living except that the Parties lived in a home and now the Wife lives in a home. Husband currently rents a home.

I) As far as the tax consequences go, the Court is unable to determine the effective rate.

The only significant change in these factors since the divorce is that Husband's income has increased. Wife's income, however, has remained the same. We fail to see how this finding supports a decrease in Husband's alimony obligation.

Because there is no factual basis upon which to modify the 2007 alimony provision, we reverse the trial court's decision to decrease Husband's alimony obligation and remand with instructions to reinstate the alimony award as set forth in the final divorce decree. Since the alimony arrearage judgment was based on the reduced alimony obligation, we also reverse that award and remand with instructions for the trial court to recalculate Husband's arrearage based on the 2007 alimony agreement.

IV. HUSBAND'S ARREARAGE

Wife argues that the trial court erred by calculating Husband's arrearage for 2015 based on the salary he made at the time of the divorce rather than the salary he made in 2015. We agree.

The trial court's order awarding an arrearage judgment reads as follows:

Husband shall pay $2,500.00 per pay period for 2015, plus one half of the $12,000.00 bonus he received in that year. He shall be credited for the overpayments he made in 2016, at the rate of $760.00 per month. If this results in an overpayment to Wife rather than a deficiency, then it shall be extinguished. Any deficiency owed to Wife shall be paid.

In calculating this, there were four payments that were $500.00 short, plus the one half of the bonus ($6,000.00) for a total of $8,000.00 in credit owed for 2015. There were six months paid before the date of Trial, at an overage of $760.00 per month. This results in an overpayment in 2016 by Husband of $4,560.00. This results in a net arrearage of $3,440.00 owed by Husband to Wife, which is hereby reduced to JUDGMENT.

Pursuant to the final divorce decree, Husband was to pay Wife half of his gross earnings from each year. Based on Husband's W-2 for 2015, his gross earnings were $158,967.05;

however, the trial court calculated the alimony arrearage for 2015 based upon Husband's 2007 income, which was $120,000. Therefore, on remand, the trial court should award an arrearage judgment that is based on Husband's gross earnings for 2015.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed against Husband, Gerald Edward Baker.

_____
FRANK G. CLEMENT JR., P.J., M.S.