IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 17, 2018 Session

## MARK REYNOLDS, AS ADMINISTRATOR OF THE ESTATE OF CAROL ANN REYNOLDS v. GRAY MEDICAL INVESTORS, LLC., ET AL.

### Interlocutory Appeal from the Circuit Court for Washington County
No. 34916    Jean A. Stanley, Judge

### No. E2017-02403-COA-R9-CV

We granted the Tenn. R. App. P. 9 application for interlocutory appeal in this case to consider whether a healthcare provider can use Tenn. Code Ann. § 68-11-272, ("the peer review statute"), to claim privilege and exclude evidence that an employee was threatened with dismissal or retaliation if the employee refused to change their story or alter documents in order to cover up possible negligent conduct.  We find and hold that the peer review privilege contained within Tenn. Code Ann. § 68-11-272 never was intended to allow a healthcare provider to attempt without fear of adverse consequences to force an employee to commit perjury.  We, therefore, reverse the July 31, 2017 order of the Circuit Court for Washington County ("the Trial Court") excluding the testimony of defendants' employee pursuant to the peer review privilege contained in Tenn. Code Ann. § 68-11-272 and remand this case for further proceedings consistent with this Opinion.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and THOMAS R. FRIERSON, II, JJ., joined.

Larry V. Roberts and Michael E. Large, Johnson City, Tennessee, for the appellant, Mark Reynolds, as the Administrator of the Estate of Carol Ann Reynolds.

Alan S. Bean, Nashville, Tennessee, for the appellees, Gray Medical Investors, LLC; and Life Care Centers of America, Inc. d/b/a Life Care Center of Gray.

# OPINION

## Background

Mark Reynolds ("Plaintiff") sued Gray Medical Investors, LLC and Life Care Centers of America, Inc. d/b/a Life Care Center of Gray ("Defendants") with regard to injuries allegedly sustained in a fall, or several falls, that resulted in the death of Carol Ann Reynolds ("Deceased") while Deceased was a nursing home resident under Defendants' care. Heather Miller, a certified nursing assistant employed by Defendants, provided care for Deceased while Deceased was a resident under Defendants' care. Miller testified that one of her supervisors, Jennifer Solomon, wanted Miller to change the time on a report to show that a second fall suffered by Deceased happened closer in time to a first fall such that Defendants did not have time to take corrective action before the second fall.

Defendants filed a motion in limine to exclude Miller's testimony about her conversation with Solomon claiming that the statements made by Miller were privileged pursuant to Tenn. Code Ann. § 68-11-272, the peer review statute, because the conversation between Solomon and Miller occurred during a quality improvement committee ("QIC") meeting.

After a hearing on the motion in limine, the Trial Court entered its order on July 31, 2017 excluding the portions of Miller's testimony about her conversation with Solomon after finding and holding, *inter alia*:

> A certified nursing assistant, Heather Miller, has testified in deposition that two of defendant's corporate employees intimidated and coerced her to change a written statement during a QIC meeting. Apparently, Ms. Miller's original handwritten statement indicated that the time of Carol Reynolds' fall was between 4:30 and 4:45. In her deposition, Ms. Miller testified that defendant's employee, Ms. Jennifer Solomon, insisted that the fall occurred earlier and that Ms. Miller should change her statement. They finally settled on Ms. Miller saying that she just did not remember the time. Ms. Miller says that she "wanted out of there" so she signed the second statement.

Plaintiff filed a motion for a Tenn. R. App. P. 9 interlocutory appeal in the Trial Court, which the Trial Court granted. Plaintiff then filed her application for a Rule 9

2

interlocutory appeal with this Court.  By order entered February 23, 2018, this Court granted the application for interlocutory appeal.

## **Discussion**

We granted this Rule 9 appeal to consider the issue, as phrased by the Trial Court:

> Whether a nursing home, hospital or any other healthcare provider in the State of Tennessee, can use T.C.A. § 68-11-272 (i.e.: Peer Review Statute) to claim privilege, and exclude evidence that the healthcare provider threatened an employee with dismissal or retaliation, if the employee does not change their story or alter documents, so the healthcare provider can perpetrate a fraud, on nursing home residents, hospital patients and their families, to cover up negligent conduct of the healthcare provider, or its employees.

This issue requires us to construe Tenn. Code Ann. § 68-11-272.  As our Supreme Court has instructed:

> Issues of statutory construction present questions of law that we review de novo with no presumption of correctness.  *Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016).  The primary goal of statutory interpretation is to carry out legislative intent without expanding or restricting the intended scope of the statute.  *State v. Smith*, 484 S.W.3d 393, 403 (Tenn. 2016) (citations omitted).  In determining legislative intent, we first must look to the text of the statute and give the words of the statute "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose."  *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted).  When a statute's language is clear and unambiguous, we enforce the statute as written; we need not consider other sources of information.  *Frazier v. State*, 495 S.W.3d 246, 249 (Tenn. 2016).  We apply the plain meaning of a statute's words in normal and accepted usage without a forced interpretation.  *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013).  We do not alter or amend statutes or substitute our policy judgment for that of the Legislature.  *Armbrister v. Armbrister*, 414 S.W.3d 685, 704 (Tenn. 2013).

*Coleman v. Olson*, 551 S.W.3d 686, 693 (Tenn. 2018).

In pertinent part, Tenn. Code Ann. § 68-11-272 provides:

3

(c)(1) Records of a QIC [quality improvement committee] and testimony or statements by a healthcare organization's officers, directors, trustees, healthcare providers, administrative staff, employees or other committee members or attendees relating to activities of the QIC shall be confidential and privileged and shall be protected from direct or indirect means of discovery, subpoena or admission into evidence in any judicial or administrative proceeding. Any person who supplies information, testifies or makes statements as part of a QIC may not be required to provide information as to the information, testimony or statements provided to or made before such a committee or opinions formed by such person as a result of committee participation.

Tenn. Code Ann. § 68-11-272(c)(1) (2013).

Plaintiff argues in his brief on appeal that the purpose of a "QIC is to evaluate the safety and quality of patient care, not threaten or intimidate employees into changing statements or altering documents." In support of this argument Plaintiff states that the context within which the 'coercion' occurred does not fit within the statutorily defined purpose of a QIC and, therefore, the evidence cannot be confidential and privileged under Tenn. Code Ann. § 68-11-272. Plaintiff cites to section (b)(4) of Tenn. Code Ann. § 68-11-272, which provides:

(4) "Quality improvement committee" or "QIC" means a committee formed or retained by a healthcare organization, an activity of a healthcare organization, or one (1) or more individuals employed by a healthcare organization performing the types of functions listed in subdivisions (4)(A)-(P), the purpose of which, or one (1) of the purposes of which is to evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services by performing functions including, but not limited to:

(A) Evaluation and improvement of the quality of healthcare services rendered;
(B) Determination that health services rendered were professionally indicated or were performed in compliance with the applicable standards of care;
(C) Determination that the cost of health care rendered was reasonable;
(D) Evaluation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider;
(E) Reduction of morbidity or mortality;

4

(F) Establishment and enforcement of guidelines designed to keep the cost of health care within reasonable bounds;

(G) Research;

(H) Evaluation of whether facilities are being properly utilized;

(I) Supervision, education, discipline, admission, and the determination of privileges of healthcare providers;

(J) Review of professional qualifications or activities of healthcare providers;

(K) Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients;

(L) Evaluation, review or improvement of methods, procedures or treatments being utilized;

(M) Participation in utilization review activities, including participation in review activities within the facility or hospital system and activities in conjunction with an insurer or utilization review agent under title 56, chapter 6, part 7;

(N) The evaluation of reports made pursuant to § 68-11-211 and any internal reports related thereto or in the course of a healthcare organization's patient safety and risk management activities;

(O) Activities to determine the healthcare organization's compliance with state or federal regulations;

(P) Participation in patient safety activities as defined at § 921 of the Patient Safety and Quality Improvement Act of 2005;

Tenn. Code Ann. § 68-11-272(b)(4) (2013).

Defendants argue in their brief on appeal that the meeting between Miller and Solomon was a closed door QIC meeting with only one other person present, another one of Defendants' employees, and that:

the purposes of [Solomon's] investigation, evaluation, and interviews were to (A) evaluate and potentially improve the quality of health care services which had been rendered; (B) determine whether the health services rendered were professionally indicated or were performed in compliance with applicable standards of care; (C) evaluate the qualifications, competence and performance of providers at LCCG; (D) reduce morbidity or mortality; (E) research the timeline of events during [Deceased's] residency; (F) review the professional qualifications or activities of providers at LCCG; (G) evaluate the quantity, quality, and timeliness of health care services rendered to [Deceased]; (H) evaluate, review, or potentially improve the methods, procedures, or treatments utilized at

5

LCCG; (I) evaluate internal reports (including Ms. Miller's "incident report") created in the course of LCCG's resident safety and risk management activities; and (J) determine LCCG's compliance with state and federal regulations.

Defendants allege that Plaintiff's counsel contacted Miller while she still was employed by Defendants without Defendants' consent or knowledge and conducted a telephone interview of Miller during which Miller made the allegations about being coerced to make changes to her written statement documenting the falls suffered by Deceased.

Defendants also assert that the testimony of Miller regarding the 'coercion' does not qualify as an "original source" because Miller obtained this information exclusively through participation in the QIC process.[1] Defendants also argue that there is no exception for bad faith or malice because the statute refers to persons providing information to a QIC, not persons providing information elsewhere.[2]

Defendants also argue that creating an implied exception to the privilege would undermine "the entire quality improvement process as a whole," and would go against the legislative purpose of the statute. Defendants assert that contrary to Plaintiff's assertion that an implied exception is necessary to deter fraud, "this specific case exposes the fallacy of that fantastical position" as the alleged coercion was to cover up possible negligent conduct to evade liability and if that were what Defendants were doing then they would voluntarily have produced Miller's "**supposedly altered statement**." Defendants assert that instead of producing this allegedly altered statement they have withheld all of Miller's statements from discovery pursuant to the QIC privilege.

The Trial Court found, and it is not contested, that the statements made by Miller were made during a QIC meeting. The evidence in the record on appeal does not preponderate against this finding.

---

[1] Section (c)(2) of the statute provides: "Any information, documents or records, which are not produced for use by a QIC or which are not produced by persons acting on behalf of a QIC, and are otherwise available from original sources, shall not be construed as immune from discovery or use in any judicial or administrative proceeding merely because such information, documents or records were presented during proceedings of such committee." Tenn. Code Ann. § 68-11-272(c)(2) (2013).

[2] Section (d) provides: "No healthcare organization's officers, director, trustee, healthcare providers, administrative staff, employee or other committee members or attendees shall be held liable in any action for damages or other relief arising from the provision of information to a QIC or in any judicial or administrative proceeding, if such information is provided in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist. Tenn. Code Ann. § 68-11-272(d) (2013).

The language of Tenn. Code Ann. § 68-11-272 clearly and unambiguously provides that the purpose of a QIC is to "evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services . . . ." Tenn. Code Ann. § 68-11-272(b)(4) (2013). While the statute does provide for protections to allow healthcare providers to evaluate healthcare via a QIC process in order to improve healthcare, the alleged statements at issue in this case were not designed to "evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services . . . ." Tenn. Code Ann. § 68-11-272(b)(4) (2013). Instead, the statements at issue concern the allegation that Defendants' employee was threatened or coerced to change her account of the care rendered to Deceased and to alter records concerning that care. Thus, the statements at issue concern an alleged attempt to coerce perjury or commit a fraud. Suborning perjury and committing fraud are directly contrary to the purpose of Tenn. Code Ann. § 68-11-272 because such fraud or perjury only could make it more difficult to "evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services . . . ." Tenn. Code Ann. § 68-11-272(b)(4) (2013).

We cannot accept that it was the intent of our General Assembly to allow healthcare providers to use a QIC meeting as a shield to commit such acts as suborning perjury and then hide or cover up those bad acts by claiming peer review privilege. Nothing in the statute's text even hints otherwise as to the General Assembly's intent. Our General Assembly made the policy decision to protect acts taken in furtherance of improving healthcare. We will not "substitute our policy judgment for that of the Legislature." *Coleman*, 551 S.W.3d at 693. The alleged acts in the case now before us, however, were taken not to improve healthcare but to suborn perjury.

We note that the situation in the case now before us is an unusual and limited one. While most all of what happens during a QIC meeting is protected under the statute from disclosure, the protections do not extend to allowing healthcare providers to threaten or coerce employees so as to suborn perjury or commit fraud. Our holding will not undermine the peer review process as a whole, as Defendants argue, because actions taken "to evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services . . ." still will be protected under the statute. Tenn. Code Ann. § 68-11-272(b)(4) (2013). The alleged statements at issue in this case, however, concern suborning perjury, an act not protected by the peer review statute as suborning perjury is a crime pursuant to Tenn. Code Ann. § 39-16-507 (2014) and serves only to defeat the stated purpose of Tenn. Code Ann. § 68-11-272. In no known universe does suborning perjury fit within the General Assembly's stated purpose of Tenn. Code Ann. § 68-11-272. Given all of the above, we reverse the Trial Court's July 31, 2017 order holding Miller's testimony privileged and inadmissible.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellees, Gray Medical Investors, LLC; and Life Care Centers of America d/b/a Life Care Center of Gray.

_____
D. MICHAEL SWINEY, CHIEF JUDGE