IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2021 Session

## KIM RENAE NELSON v. LORING E. JUSTICE

**Appeal from the Juvenile Court for Roane County**
**No. 16002      William B. Acree, Judge**

_____

### No. E2020-00287-COA-R3-CV
_____

This appeal concerns the trial court's entry of judgment on an appeal bond for attorney fees. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II and KRISTI M. DAVIS, J.J., joined.

Linn Guerrero, Knoxville, Tennessee, for the appellant, Loring E. Justice.

Cecilia S. Peterson and David L. Valone, Knoxville, Tennessee, for the appellee, Kim Renae Nelson.

Jeffrey S. Price and J. Caralisa Connell, Nashville, Tennessee, for the appellee, The Guarantee Company of North America, USA.

## OPINION

### I.      BACKGROUND

Kim Renae Nelson and Loring E. Justice are the parents of a child born in February of 2005. The parties have been litigating matters concerning the child since before his birth. Ms. Nelson is an attorney. Mr. Justice has been disbarred. By order entered April 11, 2017, the trial court awarded Ms. Nelson $376,638.90 in attorney fees ("the underlying judgment"). Mr. Justice moved the trial court for a partial stay of execution on the underlying judgment, pending the outcome of his appeal. Following a hearing, the trial court granted Mr. Justice's motion "conditioned upon [Mr. Justice]

obtaining an appeal surety bond through a licensed, professional bonding company in the amount of $450,000.00 to secure payment of the judgment in full, interest, damages for delay, and costs on appeal."

As required, Mr. Justice secured the appeal bond. Specifically, on May 11, 2017, The Guarantee Company of North America USA ("the Surety") issued appeal bond number 15144284 on behalf of Mr. Justice, as principal, in the amount of $450,000.00. As a condition of the Surety's issuance of the bond, Mr. Justice executed an "all purpose bond application" and indemnity agreement on May 10, 2017. The indemnity agreement obligated Mr. Justice to, among other things, pay premiums on the bond, and "[t]o completely indemnify the [Surety] from and against any liability, loss, cost, attorney's fees, and expenses of whatsoever kind or nature, including the enforcement of [the indemnity agreement], which the [Surety] shall at any time sustain or incur by reason or in consequence of having executed or procured the execution of the bond." The indemnity agreement also states that Mr. Justice is liable for all amounts paid by the Surety in good faith under the belief that it was liable or for payments that were necessary to protect the Surety's rights. Furthermore, the Surety's vouchers or other evidence of payment are considered conclusive evidence of the fact and extent of Mr. Justice's liability under the terms of the indemnity agreement.

Mr. Justice pursued his appeal, but was not successful. A panel of this court upheld the trial court's rulings and affirmed the underlying judgment in all respects. *Nelson v. Justice*, No. E2017-00895-COA-R3-CV, 2019 WL 337040 (Tenn. Ct. App. Jan. 25, 2019), *perm. app. denied* (Tenn. Sep. 18, 2019).[1]

Ms. Nelson then sought payment of the underlying judgment plus post-judgment interest from the Surety on October 1, 2019, prompting the Surety to demand Mr. Justice to satisfy Ms. Nelson's claim on the bond or obtain an order discharging the bond. When Mr. Justice declined payment, did not otherwise satisfy the underlying judgment, and did not obtain an order discharging the bond, the Surety filed a motion in the trial court to determine its obligations. In its motion, the Surety stated, "if this Court deems that [the Surety] is obligated to make payment under the Bond, [the Surety] moves for a judgment against Justice pursuant to Tenn. Code Ann. § 25-3-122 and Justice's contractual obligations." The Surety noted that "Justice may have additional defenses to assert against [the Surety's] payment to Nelson under the Bond," and invited Mr. Justice to "clarify or further articulate [his] position and objections." The Surety also moved the court for an order discharging its obligations under the bond. Likewise, on November 20, 2019, Ms. Nelson filed a motion seeking payment upon the bond.

---

[1] Partially overruled on other grounds by *In re Mattie L.*, -- S.W.3d ---, No. W2018-02287-SC-R11-PT, 2021 WL 405528, at *4 (Tenn. Feb. 5, 2021).

On January 17, 2020, Mr. Justice filed a substantive "Response to Motions Regarding Surety Bond and Constitutional Challenge to Tenn. Code Ann. § 25-3-122," in which he raised a number of alleged defenses and challenges to the bond's validity, Ms. Nelson's payment under the bond, and the Surety's potential judgment against him, as principal, pursuant to the statute.

The trial court held a hearing on January 23, 2020, in which counsel for Ms. Nelson, counsel for Mr. Justice, and counsel for the Surety participated and fully argued their positions.[2] By order entered February 13, 2020, the trial court entered a judgment upon the appeal bond, ordering the Surety to submit payment to Ms. Nelson in the amount of $436,194.92.[3] Upon this payment to Ms. Nelson, the Surety would be released from its obligations under the bond. The trial court found that "[p]ursuant to Tenn. Code Ann. 25-3-122, [the Surety] is entitled to a judgment against [Mr. Justice] in the amount of $436,194.92 plus $2,724.00 in attorneys' fees." Accordingly, the trial court entered a judgment against Mr. Justice in favor of the Surety for $438,918.92 upon which execution could issue.

The Surety deposited the payment owed to Ms. Nelson in the court's registry while Mr. Justice's motion to alter or amend was pending. On February 20, 2020, the trial court denied Mr. Justice's motion, finding that he had presented no new arguments, that the arguments presented were meritless, and that he had failed "to cite legal authority to support any and all propositions raised in [his] brief." The trial court ordered the Clerk to disburse the funds to Ms. Nelson. Mr. Justice appealed. Requests for a stay pending the outcome of this appeal have been denied by the trial court and by this court.

## II.    ISSUES

Mr. Justice raises a number of issues for our review which we restate and reorder as follows: (1) Whether Ms. Nelson nullified her right to claim on the appeal bond by violating the stay order; (2) Whether there was adequate consideration for the appeal bond; (3) Whether the appeal bond was invalidated because it was not formally approved by the trial court; (4) Whether enforcement of the underlying judgment resulted in manifest injustice; (5) Whether Mr. Justice was afforded due process; (6) Whether Tennessee Code Annotated section 25-3-122 is superseded by Tennessee Rule of Civil Procedure 65A; (7) Whether Tennessee Code Annotated section 25-3-122 is

---

[2] Mr. Justice himself did not attend.

[3] This amount represented the underlying judgment plus post-judgment interest accruing at a rate of 5.75% beginning on April 11, 2017.

unconstitutional as applied; (8) Whether Tennessee Code Annotated section 25-3-122 is preempted by 28 U.S.C. §1332; and (9) Whether Tennessee Code Annotated section 25-3-122 violates the federal interpleader statute, 28 U.S.C. § 1335.

Mr. Justice also states a "catch all" issue of "whether the trial court erred in awarding judgment, in whole or in part, to [Ms. Nelson] against [the Surety]." This issue is duplicative of the more specific issues stated above and does not correspond to a section in Mr. Justice's argument, so we will not specifically address it.

## III. STANDARD OF REVIEW

We review a non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). "Because issues of constitutionality and statutory construction are questions of law, we review them de novo with no presumption of correctness accorded to the legal conclusions of the courts below." *Willeford v. Klepper*, 597 S.W.3d 454, 464 (Tenn. 2020) (citing *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009)). Interpretation of the Tennessee Rules of Civil Procedure is a question of law, which we review de novo with no presumption of correctness. *Lacy v. Cox*, 152 S.W.3d 480, 483 (Tenn. 2004).

## IV. DISCUSSION

### (1)

First, Mr. Justice argues that Ms. Nelson's conduct during the pendency of the appeal disqualified her from payment upon the appeal bond. He explains that Ms. Nelson obtained a judgment lien on his property during the pendency of the appeal and refused to remove it. In Mr. Justice's view, Ms. Nelson's actions violated the trial court's order to partially stay execution on the underlying judgment, should be characterized as contempt of court, and "should have disqualified [Ms. Nelson] from making a claim on the bond."

The trial court found that the stay order "was never violated in the first place" because:

[f]iling a copy of the Court judgment in the Knox County Register of Deeds does not violate the Court's Stay Order, nor does it amount to contempt of court. However, even if the filing was contemptuous, such conduct would not void the bond. There is no rational basis in law or fact to support the argument that filing a judgment lien voids or negates an appeal[] bond.

We agree with the trial court's reasoning. On appeal, Mr. Justice repeatedly references Ms. Nelson's allegedly "contemptuous acts" without raising as an issue the trial court's denial of his motion for contempt during the hearing. Our Supreme Court has held that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). Nor does Mr. Justice reference with proper citation to authority the legal framework for civil contempt claims. "In order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a)." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Even if the issue had been properly raised, we would review the trial court's ruling that Ms. Nelson's actions did not amount to contemptuous conduct under the deferential abuse of discretion standard. *See Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

Moreover, as discussed in further detail below, the Surety's obligations under the bond were not dependent on the stay of execution pending appeal. We have not found, nor has Mr. Justice cited, caselaw supporting his contention that violation of a stay order invalidates a claimant's claim on an appeal bond itself. Mr. Justice concedes that "there is probably not an abundance of law on this issue." With the above considerations in mind, we affirm the trial court's finding that Ms. Nelson's filing a judgment lien on certain property belonging to Mr. Justice did not void the appeal bond.

(2)

Second, Mr. Justice incorrectly maintains that the trial court's order directing a partial stay of execution on the underlying judgment was the consideration for the appeal bond. There is no dispute that the Surety issued the appeal bond *on Mr. Justice's behalf*. The bond's plain language does not set forth as a condition precedent whether Mr. Justice "actually received a stay," as he argues, prior to the bond becoming enforceable. Rather it states: "NOW, THEREFORE, the condition of this obligation is such that if the Principal [Mr. Justice] shall diligently prosecute its appeal to a decision, and shall promptly perform and satisfy the judgment, then this obligation will be void; otherwise to remain in full force and effect."

- 5 -

Consideration "exists when the promisee does something that it is under no legal obligation to do or refrains from doing something which it has a legal right to do." *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 188 (Tenn. Ct. App. 2010) (quoting *Brown Oil Co. v. Johnson*, 689 S.W.2d 149, 151 (Tenn. 1985)). Tennessee law creates a rebuttable presumption that all contracts in writing signed by the party to be bound are "prima facie evidence of a consideration." *See* Tenn. Code Ann. § 47-50-103; *Cumberland Properties, LLC v. Ravenwood Club, Inc.*, No. M2010-01814-COA-R3-CV, 2011 WL 1303375, at *10 (Tenn. Ct. App. Apr. 5, 2011)

The burden of proof to overcome the presumption of consideration is upon the party asserting the lack of consideration. *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 552 (Tenn. Ct. App. 1991). The Surety was under no legal obligation to issue the bond on Mr. Justice's behalf, so its issuance of the bond amounts to adequate consideration. Therefore, we reject Mr. Justice's argument that the bond was "nullified" for lack of consideration.

(3)

Third, citing Tennessee Rule of Civil Procedure 62.04, Mr. Justice argues that "the bond was never valid or in force because the . . . trial court never approved it." Rule 62.04 provides: "Except as otherwise provided in Rule 62.01, when an appeal is taken the appellant by giving a bond may obtain a stay. The bond may be given at or after the time of filing the notice of appeal. The *stay* is effective when the bond is approved by the court." (Emphasis added). Although Rule 62.04 makes the effectiveness of a stay contingent upon the court's approval of the bond, the validity of the appeal bond itself is not contingent upon such recognition. The language of the Rule cannot be stretched to support Mr. Justice's contention. In addition, the plain language of the bond at issue does not set forth as a condition precedent to its enforceability the trial court's formal approval of the bond.

Next, although he did not designate this as an issue, Mr. Justice states that "the trial court never acquired jurisdiction over" the Surety, a Michigan-based corporation. In support of this contention, Mr. Justice argues that "the filing of the bond with the trial court for its examination to approve or disapprove is what gives the trial court jurisdiction over an out-of-state bonding company." Mr. Justice does not further develop this conclusory argument. For its part, the Surety points out that the appeal bond expressly references the underlying Roane County, Tennessee judgment and concedes that it "likely consented to personal jurisdiction in the State of Tennessee despite being a Michigan

- 6 -

corporation by issuing an appeal bond relative to a Tennessee judgment."[4]  As the Surety correctly notes, Tennessee Rule of Civil Procedure 65A provides:

> Whenever these rules require or permit the giving of a bond or other security, security may be given in any other form the court deems sufficient to secure the other party.  Whenever security is given in the form of a bond or other undertaking with one or more sureties, the address of each surety shall be shown on the bond or other undertaking.  *Each surety submits to the jurisdiction of the court*.  A surety's liability may be enforced on motion without the necessity of an independent action.  The motion shall be served on the surety as provided in Rule 5 at least 20 days prior to the hearing thereon.

Tenn. R. Civ. P. 65A (emphasis added).  In short, if this issue had been properly raised by Mr. Justice, we would find it to be without merit.

(4)

Next, in a rather disjointed narrative, Mr. Justice seems to claim that manifest injustice would occur if recovery pursuant to the bond is upheld.  He alleges that the underlying judgment was procured by Ms. Nelson's fraud and deceit, claims that are now the subject of a separate action filed against Ms. Nelson pursuant to Tennessee Rule of Civil Procedure 60.02.  Mr. Justice alleges that "for months, [Ms. Nelson] fled service of a petition that seeks, in part, to void the underlying judgment under Tenn. R. Civ. P. 60 or by independent action.  The petition is still pending."

> The Tennessee Rules of Civil Procedure provide an outlet for parties seeking relief from a final judgment—Rule 60.02.  Under Rule 60.02, parties may seek relief from a final judgment on the basis of, *inter alia*, mistake, inadvertence or fraud.  *See* Tenn. R. Civ. P. 60.02(1) & (2).  These motions must be made within one year of the date of the trial court's final judgment.

*Autin v. Goetz*, 524 S.W.3d 617, 628 (Tenn. Ct. App. 2017).

Assuming Ms. Nelson did avoid service of Mr. Justice's Rule 60.02 motion in the past, the transcript indicates that this was cured during the hearing when the trial court allowed service on Ms. Nelson's counsel.  Bearing in mind that "[a] motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation," Tenn. R.

---

[4] Ms. Nelson submitted a brief in which she adopted the Surety's arguments in toto.

Civ. P. 60.02, it follows that Mr. Justice's collateral attack on the underlying judgment does not affect the validity of the bond itself or the Surety's obligations relative to the bond.

(5)

Next, Mr. Justice presses that Tennessee Code Annotated section 25-3-122, "as construed by the trial court, deprived [him] of due process." The statute is written such that litigants can avoid additional litigation concerning a surety's rights against the bond principal when the court has already adjudicated those rights by a finding of liability against the surety. The statute provides:

> Sureties are entitled to judgment by motion against their principals:
>
> (1) Whenever judgment has been rendered against them as such sureties;
>
> (2) Whenever such judgment, or any part thereof, has been paid by the surety.

Tenn. Code Ann. § 25-3-122.

The Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution provide that the government may not deprive an individual of life, liberty, or property without due process of law. *Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 731 (Tenn. 2012). A fundamental requirement of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 732 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Mr. Justice's contention that he was deprived due process utterly flies in the face of the record before us. The terms of the indemnity agreement between Mr. Justice and the Surety only required that the Surety make payment in good faith that it was liable for such amount. Here, the Surety exceeded its obligations by filing a motion seeking the trial court's guidance and specifically affording Mr. Justice the opportunity to respond and raise defenses. Mr. Justice was allowed two and a half months to research and craft arguments on the subject of the appeal bond. He did so and filed a substantive response. Additionally, during the hearing on January 23, 2020, Mr. Justice had the opportunity to offer testimony, evidence, and argument in support of his position. The trial court specifically advised Mr. Justice's counsel, "you have every right to have your client here to present any evidence that you wish to present for your argument on this bonding issue." After the Surety presented evidence of its loss due to Mr. Justice's actions and evidence concerning Mr. Justice's obligations under the indemnity agreement, his counsel performed cross examination. For these reasons, Mr. Justice's claim that he was

deprived the opportunity to be heard or raise defenses in violation of due process is without merit.

(6) & (7)

Next, Mr. Justice argues that Tennessee Code Annotated section 25-3-122 "is unconstitutional and superseded by Tenn. R. Civ. P. 65A." "Although the rules of civil procedure are not statutes, the same rules of statutory construction apply in the interpretation of rules." *Thomas v. Oldfield*, 279 S.W.3d 259, 261 (Tenn. 2009). When construing statutes, the court's "primary duty is to ascertain and effectuate legislative intent without broadening a statute beyond its intended scope." *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014) (citing *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013)). Our Supreme Court explains:

> In fulfilling this duty, we construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws. Our analysis always begins with the words the General Assembly has used in the statute. If the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage, without a forced interpretation. Where statutory language is ambiguous, we consider the overall statutory scheme, the legislative history, and other sources.

*Id*. (internal citations and quotations omitted). For comparison, we restate the statute and the Rule below:

> Sureties are entitled to judgment by motion against their principals:
>
> (1) Whenever judgment has been rendered against them as such sureties;
>
> (2) Whenever such judgment, or any part thereof, has been paid by the surety

Tenn. Code Ann. § 25-3-122.

RULE 65A: FORM OF SECURITY; PROCEEDINGS AGAINST SURETIES.

> Whenever these rules require or permit the giving of a bond or other security, security may be given in any other form the court deems sufficient to secure the other party. Whenever security is given in the form of a bond or other undertaking with one or more sureties, the address of each surety

shall be shown on the bond or other undertaking. Each surety submits to the jurisdiction of the court. A surety's liability may be enforced on motion without the necessity of an independent action. The motion shall be served on the surety as provided in Rule 5 at least 20 days prior to the hearing thereon.

Tenn. R. Civ. P. 65A.

Mr. Justice contends that the "statute allows no process in favor of the principal, as literally written, and transparently violates the principals [*sic*] of due process because a principal literally has no ability to raise defenses against a surety, not even for fraud, misrepresentation, or coercion." By Mr. Justice's theory, Rule 65A "supersedes the statute and does not allow for a judgment by motion in favor of the bonding company against the principal, remedying the Constitutional issue."

We have not found, nor has Mr. Justice cited, caselaw or legislative guidance indicating that Rule 65A supersedes Tennessee Code Annotated section 25-3-122. This is because, by its title and plain language, Rule 65A sets forth the procedure by which a judgment is entered *against a surety*. Rule 65A does not contemplate the surety's right to obtain a judgment against the surety's principal. Here, the statute and the Rule do not conflict, nor does one supersede the other. They simply address distinct subjects. Read side by side, the unforced and logical interpretation is that Rule 65A allows for a judgment against the surety without the necessity of an independent action, and Tennessee Code Annotated section 25-3-122 allows for the surety to obtain a judgment against its principal by motion. In other words, Rule 65A is inapplicable to the claims by sureties against their principals.

Determining whether Tennessee Code Annotated section 25-3-122 is unconstitutional as applied to Mr. Justice is irrelevant to the outcome of this appeal. His sole argument against the constitutionality of the statute is that it "violates the principals [*sic*] of due process because a principal literally has no ability to raise defenses against a surety, not even for fraud, misrepresentation, or coercion." As detailed herein, Mr. Justice was afforded due process throughout these proceedings. Notably, he did not allege fraud, misrepresentation, coercion or any such defense against the Surety. Also, the cases Mr. Justice cites either are not on point or do not stand for the proposition asserted in his brief. Lastly, once the trial court determined that the Surety was obligated to make payment to Ms. Nelson under the bond, Mr. Justice was contractually liable to the Surety pursuant to the terms of the indemnity agreement between them, notwithstanding the statute. "When the outcome of a constitutional claim is inconsequential to the outcome of a case, we decline to address the constitutional question raised." *In re Kandace D.*, No. E2017-00830-COA-R3-PT, 2018 WL 324452,

at *9 (Tenn. Ct. App. Jan. 8, 2018); *see also Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) ("[W]e 'avoid deciding constitutional issues when a case can be resolved on non-constitutional grounds[.]'") (quoting *Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn. Ct. App. 1994)).  Accordingly, it is not necessary for us to address this issue, and it is pretermitted.

(8) & (9)

Next, grasping at straws, Mr. Justice argues that Tennessee Code Annotated section 25-3-122 "is preempted by the federal diversity jurisdiction statute."  He states that because there is diversity of citizenship between the Michigan-based Surety and himself, "to the extent the Tennessee statute would frustrate diversity jurisdiction, it is preempted."

Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . ."  U.S. Const. art. VI, cl. 2.  Generally, the States govern "within their particular spheres concurrent with the federal government subject only to the power of the Congress under the Supremacy Clause of the United States Constitution to preempt state law."  *Pendleton v. Mills*, 73 S.W.3d 115, 126 (Tenn. Ct. App. 2001) (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 670 (Tenn. Ct. App. 1997)).  Consistent with this principle, a federal law or regulation may preempt an otherwise valid state law.  *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 55 (Tenn. 2013).  Courts recognize both express and implied preemption, but "no matter what type of preemption is at issue, 'the purpose of Congress is the ultimate touchstone.'"  *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).  "In cases involving express preemption, the text of the federal statute will define the domain that Congress intended to preempt."  *Pendleton*, 73 S.W.3d at 127 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)).  Courts are "reluctant to presume" that a state's powers in matters traditionally subject to its authority "are [] displaced by a federal statute unless that is the clear and manifest intent of Congress."  *Id.* at 126.

Here, Mr. Justice's notions are incorrect.  Federal courts have exclusive jurisdiction over some categories of cases, meaning that state courts do not adjudicate those disputes.  State courts, by concurrent jurisdiction, hear most types of cases not explicitly reserved to the federal courts by constitutional or statutory law. *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981).  Cases involving patents, for example, fall under the federal court's exclusive jurisdiction.  *See* 28 U.S.C. §1338(a).  A federal court's ability to hear a case under the federal diversity jurisdiction statute that Mr. Justice cites, 28 U.S.C. §1332, is an example of concurrent jurisdiction.

Mr. Justice has not demonstrated how Tennessee Code Annotated section 25-3-122 conflicts with or frustrates the accomplishment of the goals of any federal statute, including 28 U.S.C. §1332. Nor has he demonstrated that 28 U.S.C. §1332 preempts the Tennessee statute either expressly or by implication. Therefore, his preemption argument is without merit.

Mr. Justice also argues that the Tennessee statute "violates" the federal interpleader statute which provides:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335. The federal interpleader statute is irrelevant to the case before us because Ms. Nelson was the only person claiming entitlement to the proceeds of the appeal bond. By its plain language, the federal interpleader statute is applicable when two or more adverse and diverse claimants are claiming entitlement to money, property, or benefits of the subject bond. *Id.* Mr. Justice also has failed to develop this issue to

/show how Tennessee Code Annotated section 25-3-122 "violates" the federal interpleader statute.

Mr. Justice exhausted his appeals relative to the underlying judgment. The trial court properly considered all of the arguments he presented in writing and at the hearing. Having studied the record, the applicable law, and the briefs presented in this matter, we affirm the trial court's decision to enter a judgment upon the appeal bond, ordering the Surety to submit payment to Ms. Nelson in the amount of $436,194.92, which the Surety has done. Likewise, we affirm the trial court's finding that the Surety is entitled to a judgment against Mr. Justice in the amount of $436,194.92 plus $2,724.00 in attorney fees, pursuant to Tennessee Code Annotated section 25-3-122. Therefore, we affirm the trial court's February 10, 2020 order in all respects.

## V.    CONCLUSION

We affirm the judgment of the Juvenile Court. The case is remanded for such further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Loring E. Justice, for which execution may issue if necessary.

_____
JOHN W. McCLARTY, JUDGE

- 13 -