# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE
## May 30, 2013 Session

## TRACY ROSE BAKER v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Chancery Court for Sumner County**
**No. 2011DM168      David E. Durham, Judge, by Interchange**

---

**No. M2011-01381-SC-R11-PC - Filed September 6, 2013**

---

We accepted this appeal to determine whether the petitioner is entitled to seek post-conviction relief from a judgment in a civil case finding her in criminal contempt and imposing sanctions, pursuant to Tennessee Code Annotated section 29-9-102 (2012). We hold that a criminal contempt adjudication under Tennessee Code Annotated section 29-9-102 does not amount to a criminal conviction under the general criminal laws for purposes of the Post-Conviction Procedure Act. We affirm the judgment of the Court of Criminal Appeals affirming the dismissal of the petition.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the**
**Court of Criminal Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

William Caldwell Hancock, Nashville, Tennessee, for the appellant, Tracy Rose Baker.

Robert E. Cooper, Jr., Attorney General & Reporter; William E. Young, Solicitor General; James E. Gaylord, Assistant Attorney General; Clark B. Thornton, Assistant Attorney General; Ray Whitley, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

The petitioner, Tracy Rose Baker, and Jeffrey D. Baker ("Husband") were divorced on January 12, 2009. The relationship between the Bakers remained acrimonious, and a series of contempt petitions were filed by both parties over the course of the months following the divorce decree. Husband's attorney acted as prosecutor on Husband's petitions for contempt. On April 16, 2010, while the petitioner was represented by counsel, she signed an agreed order, drawn up by Husband's attorney, which was then filed by the trial court.[1] By the April 16, 2010 order ("Agreed Order"), the petitioner: (1) agreed that she had been advised of and waived her constitutional rights as a criminal defendant; (2) acknowledged her guilt of eighteen acts of criminal contempt, including violations of various orders of protection and a temporary restraining order; (3) purported to enter a "guilty plea" to eighteen counts of willful criminal contempt, in accordance with Tennessee Code Annotated section 29-9-102; and (4) agreed to a sentence of ten days on each count, run consecutively, for a total of 180 days, to be served on probation with various conditions.[2] See Baker v. Baker, No. M2010-01806-COA-R3-CV, 2012 WL 764918, at *3-4 (Tenn. Ct. App. Mar. 9, 2012) ("Baker I"). The petitioner did not attempt to modify or set aside the Agreed Order. See Tenn. R. Civ. P. 59, 60.

On July 20, 2010, Husband filed a petition seeking to revoke the petitioner's probation, requesting an ex parte order discontinuing the petitioner's visitation with the couple's minor children, and seeking adjudications of criminal contempt against the petitioner. Husband's July 20, 2010 petition alleged numerous violations against the petitioner, including that the petitioner was continuing to engage in harassing conduct of Husband, that she had failed to attend counseling appointments, and that she had sent text messages to the minor children in violation of the Agreed Order.

On July 21, 2010, a temporary restraining order was issued against the petitioner, enjoining her from exercising any parenting time pending further orders of the court. After a hearing on August 19, 2010, the trial court signed an order on August 24, 2010, finding the

---

[1] After the judges in Sumner County recused themselves from the case, Judge Carol L. Soloman of the Twentieth Judicial District was designated to resolve the contempt petitions filed by the parties.

[2] The Agreed Order recited that the petitioner was originally charged with criminal contempt under both Tennessee Code Annotated sections 36-5-104 and 29-9-104. However, the findings in the Agreed Order confirmed that the trial court did not hold the petitioner in contempt under section 36-5-104, but only under the general contempt provisions of section 29-9-102.

petitioner in violation of her probation and ordering her to serve a 180-day sentence in the Sumner County Jail.

The petitioner appealed from the trial court's August 24, 2010 order to the Court of Appeals. Baker I, 2012 WL 764918, at *5. In her appeal, the petitioner challenged: (1) the failure of the trial judge to recuse herself; (2) the propriety of Husband's attorney acting as a private prosecutor of the contempt action; (3) the failure of the trial court to follow the mandatory procedures, as outlined in Boykin v. Alabama, 395 U.S. 238 (1969), State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), and Tennessee Rule of Criminal Procedure 11(b), for the original criminal contempt "guilty pleas"; and (4) the length of the sentence imposed. The Court of Appeals denied relief on the first three issues, but granted relief on the fourth issue, reducing the petitioner's sentence in confinement to thirty days. Baker I, 2012 WL 764918, at *12. In a separate concurring opinion, one member of the Court of Appeals opined that the proper procedure for attacking the criminal contempt findings in the Agreed Order was by filing a petition for post-conviction relief. Id. at *13-14 (Cottrell, J., concurring). No application for permission to appeal was filed in this Court.

The petitioner filed a petition for post-conviction relief on April 18, 2011, and an amended petition two days later, challenging the criminal contempt adjudications in the Agreed Order on three grounds. The petitioner first alleged that the guilty pleas to eighteen instances of contemptuous conduct should be set aside because the trial court failed to conduct a hearing to assure the knowing and voluntary nature of the guilty pleas, pursuant to the requirements of Boykin, 395 U.S. at 242-43 & n.5, and Mackey, 553 S.W.2d at 344. The petitioner next alleged that the trial judge was biased against her because Husband's attorney was the judge's personal lawyer, former campaign treasurer, and a substantial donor to the judge's re-election campaign. Finally, the petitioner alleged that Husband's counsel improperly acted as a private prosecutor and, in that role, abused his prosecutorial discretion by unlawfully coercing the guilty pleas and sentences and by improperly conditioning the suspended sentence on the petitioner agreeing to surrender custody of her children and sell her house to pay his "undocumented" legal fee. The record does not indicate who received copies of the petition or amended petition. The district attorney general did not respond to the petition, but Husband's counsel answered the amended petition.

The trial court[3] summarily dismissed the petition for post-conviction relief for failure to state a colorable claim under the Post-Conviction Procedure Act. See Tenn. Code Ann.

---

[3] All local judges in Sumner County recused themselves from adjudicating the post-conviction petition. Judge David E. Durham of the Fifteenth Judicial District sat by interchange pursuant to Rule 11, section VII(c) of the Rules of the Tennessee Supreme Court.

§ 40-30-106(f) (2012).[4] The Court of Criminal Appeals affirmed the dismissal based on its finding that the Agreed Order adjudicated the petitioner in criminal contempt pursuant to Tennessee Code Annotated section 29-9-102, the general contempt statute, not a general criminal statute defining contemptuous conduct as a criminal offense. Consequently, the Court of Criminal Appeals determined that the petitioner was not entitled to seek post-conviction relief, explaining that the Post-Conviction Procedure Act encompasses only constitutional challenges to convictions for criminal offenses. Baker v. State, No. M2011-01381-CCA-R3-PC, 2012 WL 3017727, at *2-3 (Tenn. Crim. App. July 20, 2012). We granted the petitioner's application for permission to appeal.

**Analysis**

*Standard of Review*

The issue in this appeal—whether the petitioner is entitled to seek post-conviction relief from the Agreed Order—is a question of law, involving the interpretation of statutes; thus, our review is de novo with no presumption of correctness attaching to the rulings of the courts below. See Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009).

The paramount rule of statutory construction is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope. Id. at 564. We "must always begin with the words that the General Assembly has chosen" and "give these words their natural and ordinary meaning." Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language . . . ." Carter, 279 S.W.3d at 564 (citing Overstreet v. TRW Commercial Steering Div., 256 S.W.3d 626, 630 (Tenn. 2008)). Statutes should be construed in a reasonable manner "'which avoids statutory conflict and provides for harmonious operation of the laws.'" Frye v. Blue Ridge Neuroscience Ctr., P.C., 70 S.W.3d 710, 716 (Tenn. 2002) (quoting Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997)).

*Post-Conviction Procedure*

Prior to 1967, habeas corpus was the primary remedy available in Tennessee for obtaining post-conviction relief from a criminal conviction. The scope of habeas corpus relief in Tennessee was, and continues to be, narrow, providing relief only if a judgment of

---

[4] Quotations and citations to the Post-Conviction Procedure Act refer to the statutes currently in effect. Any differences between the language of the current statute and that in effect when the petition was filed have no bearing on the issue in this appeal.

criminal conviction is facially void or a term of imprisonment has expired.  See, e.g., Cantrell v. Easterling, 346 S.W.3d 445 (Tenn. 2011) (discussing the history and current status of habeas corpus in Tennessee); House v. State, 911 S.W.2d 705 (Tenn. 1995) (same); Archer v. State, 851 S.W.2d 157 (Tenn. 1993) (same).  Post-conviction remedies available in other states were also historically narrow in scope.  House, 911 S.W.2d at 708-09 (citing Note, State Criminal Procedure and Federal Habeas Corpus, 80 Harv. L. Rev. 422 (1966)).  As a result, persons convicted in state courts utilized federal habeas corpus petitions as the primary means of challenging state criminal convictions.  See Case v. Nebraska, 381 U.S. 336, 338 (1965) (per curiam) (Clark, J., concurring).   The sheer volume of federal habeas corpus petitions filed by state inmates, as well as principles of comity, eventually led the United States Supreme Court to suggest that states enact statutory post-conviction procedures, which would afford state inmates an avenue to litigate alleged constitutional errors in state courts, at least in the first instance.  See Id. at  339-40.

The Tennessee General Assembly responded to this suggestion in 1967 by enacting the Post-Conviction Procedure Act (the "Act").  Act of May 26, 1967, ch. 310, 1967 Tenn. Pub. Acts 801.  From its inception, the purpose of the Act has been to provide a procedural avenue for litigating in Tennessee courts alleged constitutional errors in Tennessee criminal convictions.  The initial draft of the Act provided that to be eligible for relief, a petitioner must prove "[t]hat he has been convicted of a crime."  Floyd Dennis, A Post Conviction Procedure Act for Tennessee 6, §105(1) (Tenn. Archives 1965).  Despite further revisions to the draft of the proposed Act, the  remedy  urged was "to any person convicted of a crime."  Floyd Dennis, Memorandum to Law Revision Commission, State of Tennessee, Relating to a Post-Conviction Procedure Act for Tennessee 53 (Tenn. Archives 1966).

 The current version of the Act provides persons "in custody under a sentence of a court of this state" the automatic right to file one petition for post-conviction relief.  Tenn. Code Ann. § 40-30-102(a), (c) (2012).  With few exceptions, the petition must be filed within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date the judgment of conviction becomes final.  Id. § 40-30-102(a)-(c).  Additionally, post-conviction petitions must be filed in the court of conviction, must name the State as the respondent, and district attorneys general are required to respond to and defend against petitions for post-conviction relief.  Id. §§ 40-30-104(a), -108.

The Act further provides that a "petition for post-conviction relief shall be limited to the assertion of claims for relief from the *judgment* or *judgments* entered in a single trial or proceeding."  Id. § 40-30-104(c) (emphasis added).  Post-conviction relief "shall be granted *when the conviction or sentence* is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  Id.

§ 40-30-103 (emphasis added).  Tennessee Supreme Court Rule 28, section 2(A), enacted to supplement the remedies and procedures set forth in the Act, defines a "petition for post-conviction relief" as "an application to the court, *filed by or on behalf of a person convicted of and sentenced for the commission of a criminal offense, that seeks to have the conviction or sentence set aside.*"[5]  Tenn. Sup. Ct. R. 28, § 2(A) (emphasis added).  This definition is also consistent with Tennessee Rule of Criminal Procedure 32, which defines a judgment of conviction as consisting not only of a sentence or a conviction, but also the plea entered, the verdict or findings, *and* the adjudication and sentence.  Tenn. R. Crim. P. 32(e)(2)(A)-(c).

Having reviewed briefly the origins of the relevant post-conviction statutes, we turn now to contempt.

*Contempt*

This Court has written on contempt on many occasions, yet the subject continues to stymy the bench and bar both in its definition and in its application.  We take this opportunity to explain again the difference between civil and criminal contempt, the rights afforded contemnors, and the sanctions available upon an adjudication of contempt.

The power of courts to punish contempts can be traced back to twelfth century English common law and was incorporated into American common law by the colonists.  See Ronald L. Goldfarb, The Contempt Power 9, 19 (1963).  The inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts.  State v. Galloway, 45 Tenn. 326, 331 (1868).

> The power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country.

Graham v. Williamson, 164 S.W. 781, 782 (Tenn. 1914).

---

[5] The General Assembly specifically vested the Tennessee Supreme Court with the authority to promulgate rules of practice and procedure to aid the post-conviction process.  Tenn. Code Ann. § 40-30-118 (2012).

However, at common law, the power of courts to punish contempts was vast and undefined, and with such unlimited and undefined discretionary power came the potential for abuse. Accordingly, in 1831, the Tennessee General Assembly enacted legislation to curb the contempt power of state judges. See Act of Dec. 19, 1831, ch. 19, 1831 Tenn. Pub. Acts 34; see also State v. Beeler, 387 S.W.3d 511, 519 (Tenn. 2012). The contempt power of Tennessee courts remains circumscribed by statute. Tennessee Code Annotated section 29-9-102 provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
>
> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
>
> (3) The willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
>
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
>
> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
>
> (6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102 (2012).

Contempt proceedings are sui generis and are incidental to the case out of which they arise. Doe v. Bd. of Prof'l Responsibility, 104 S.W.3d 465, 474 (Tenn. 2003). Although contempt proceedings are traditionally classified as "civil" or "criminal," in point of fact, contempt proceedings are neither wholly civil nor criminal in nature and may partake of the

characteristics of both. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 441 (1911); Bowdon v. Bowdon, 278 S.W.2d 670, 672 (Tenn. 1955). "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases." Gompers, 221 U.S. at 441. Tennessee courts are vested with the authority to punish both types of contempt with either a fine, a period of confinement, or both. Tenn. Code Ann. §§ 29-9-103(a), -104 (2012). However, unless otherwise specified, fines may not exceed fifty dollars and imprisonment may not exceed ten days. Id. § 29-9-103(b).

Civil contempt is remedial in character and is applied when a person refuses or fails to comply with a court order. Beeler, 387 S.W.3d at 520. A civil contempt action is brought to force compliance with the order and thereby secure private rights established by the order. Overnite Transp. Co. v. Teamsters Local Union No. 480, 172 S.W.3d 507, 510 (Tenn. 2005) (citing Robinson v. Air Draulics Eng'g Co., 377 S.W.2d 908, 912 (Tenn. 1964)). When a trial court orders imprisonment after finding civil contempt, the confinement is remedial and coercive in nature, designed to compel the contemnor to comply with the court's order. Consequently, compliance with the order will result in the contemnor's immediate release from confinement. Id. at 511. It has long been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket." State ex rel. Anderson v. Daugherty, 191 S.W. 974, 974 (Tenn. 1917).

Criminal contempt, by contrast, is designed "to preserve the power and vindicate the dignity and authority of the law and the court as an organ of society." Beeler, 387 S.W.3d at 520 (quoting Black v. Blount, 938 S.W.2d 394, 398 (Tenn. 1996)); Daugherty, 191 S.W. at 974. Sanctions for criminal contempt are generally both punitive and unconditional in nature, designed to punish past behavior, not to coerce directly compliance with a court order or influence future behavior. See Beeler, 387 S.W.3d at 520; Black, 938 S.W.2d at 398. Therefore, when a court imposes a definite term of confinement for conduct constituting criminal contempt, the contemnor cannot shorten the term by agreeing not to continue in the behavior that resulted in his confinement. Gompers, 221 U.S. at 442. "Such imprisonment operates not as a remedy coercive in its nature, but solely as punishment for the completed act of disobedience." Id. at 442-43.[6]

Criminal contempt is often regarded as a "crime" because certain substantial rights and constitutional privileges afforded criminal defendants are also afforded criminal contemnors. For example, indirect criminal contempt may only be punished after the

_____

[6] In an effort to combat the widespread confusion that exists concerning the differences between civil and criminal contempt, the Oregon Legislature enacted statutes aptly renaming the two types of contempt "remedial" and "punitive," depending on the sanction sought. See Ore. Rev. Stat. Ann. § 33.015(3)-(4) (West 2013); Dahlem v. Dahlem, 844 P.2d 208, 208-09 (Or. Ct. App. 1992).

accused contemnor has been given notice and an opportunity to respond to the allegations at a hearing.[7] Tenn. R. Crim. P. 42(b); Cooke v. United States, 267 U.S. 517, 537 (1925); State v. Maddux, 571 S.W.2d 819, 821 (Tenn. 1978). In addition to the notice requirements, the United States Supreme Court and this Court have long recognized that an alleged criminal contemnor, like a person charged with a criminal offense, is presumed to be innocent, must be proven guilty beyond a reasonable doubt, and cannot be compelled to testify against himself. Gompers, 221 U.S. at 444; Daugherty, 191 S.W. at 974. An alleged contemnor is also entitled to an attorney and may have an attorney appointed to represent him at no cost if he is not able to afford one. See Cooke, 267 U.S. at 536-37; Cottingham v. Cottingham, 193 S.W.3d 531, 536 (Tenn. 2006); see also Tenn. Sup. Ct. R. 13, § 1(d)(1)(B).

Not all rights afforded criminal defendants are available to alleged criminal contemnors, however. Contemnors are not entitled to a jury trial if the criminal contempt is not "serious" enough to require the protection of the constitutional right to a jury trial. Bloom v. Illinois, 391 U.S. 194, 198 (1968). Although the Supreme Court has not expressly defined what constitutes a "serious contempt," the Court has repeatedly held that a jury trial is not required if the contempt is punished by confinement of six months or less. See Taylor v. Hayes, 418 U.S. 488, 496 (1974); Cheff v. Schnackenberg, 384 U.S. 373, 379-80 (1966); cf. Bloom, 391 U.S. at 211 (concluding that a contempt punished by a two-year term of imprisonment is a "serious offense" to which the right to trial by jury applies); Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 837-38 (1994) (holding that a fifty-two million dollar fine could not be imposed as a sanction for criminal contempt except through a jury trial). Similarly, in this State "[t]he general rule is that a constitutional guaranty of jury trial does not apply to proceedings to punish for contempt of court whether in a court of law, a court of equity, a court having criminal jurisdiction, or other court." Pass v. State, 184 S.W.2d 1, 3 (Tenn. 1944) (internal quotation marks omitted); see also Ahern v. Ahern, 15 S.W.3d 73, 82 (Tenn. 2000).[8]

---

[7] Beyond the "civil" or "criminal" classification, contempt is also categorized as "direct" or "indirect." Direct contempt is based upon acts committed in the presence of the court and may be punished summarily, whereas indirect contempt occurs outside the presence of the court and requires notice and an opportunity to be heard. Black, 938 S.W.2d at 398. This appeal involves indirect criminal contempt.

[8] The Legislature has enacted other statutes defining certain types of contemptuous conduct as substantive criminal offenses. See, e.g., Tenn. Code Ann. § 36-3-610(a)-(b) (2010) (violation of order of protection); id. § 36-5-104(a)-(c) (failure to pay child support). Because conduct qualifying as contempt under these provisions constitutes a violation of the general criminal laws, an alleged contemnor charged under one of these provisions is entitled to a jury trial. See Brown v. Latham, 914 S.W.2d 887, 888 (Tenn. 1996); Ahern, 15 S.W.3d at 82.

Additionally, unlike criminal prosecutions, general contempt proceedings do not require an indictment and subsequent prosecution by the State. Tenn. R. Crim. P. 42(b)(2); Green v. United States, 356 U.S. 165, 185-86 (1958), overruled in part on other grounds by Bloom, 391 U.S. at 196 n.1, 198; State v. Wood, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002) (recognizing that criminal contempt is not initiated by an indictment or presentment).[9] Contempt proceedings are often initiated upon the court's own motion or upon the motion of a private party. Black, 938 S.W.2d at 398 (quoting Tenn. R. Crim. P. 42(b)). District attorneys generally do not prosecute criminal contempt proceedings based on Tennessee Code Annotated section 29-9-102 and have no mandatory duty to do so. Black, 938 S.W.2d at 402 ("Tennessee law only *requires* district attorney generals to conduct prosecutions for 'conduct proscribed as harmful by the general criminal laws.'"). In fact, a court may appoint a private prosecutor in such proceedings to vindicate its authority. Wilson v. Wilson, 984 S.W.2d 898, 900 (Tenn. 1998). By contrast, district attorneys "[s]hall prosecute in the courts of the district all violations of the state criminal statutes and perform all prosecutorial functions attendant thereto." Tenn. Code Ann. § 8-7-103(1) (2011); see also Tenn. Const. art. VI, § 5; Ramsey v. Town of Oliver Springs, 998 S.W.2d 207, 209 (Tenn. 1999).

Having reviewed the history, purpose, and language of the post-conviction relief and contempt statutes, we return to the question presented in this appeal: is the petitioner entitled to seek post-conviction relief from the Agreed Order finding her in criminal contempt pursuant to Tennessee Code Annotated section 29-9-102? The answer to this question is no.[10]

*Why Post-Conviction Relief Is Not Available To Criminal Contemnors*

The language of Tennessee Code Annotated section 29-9-102 does not define contempt as a criminal offense or prescribe a conviction for contempt. Though criminal contempt has been regarded as a "crime" for some purposes, see Black, 938 S.W.2d at 402, criminal contempt proceedings

> are not intended to punish conduct proscribed as harmful by the
> general criminal laws. Rather, they are designed to serve the

---

[9] The rights afforded in criminal contempt proceedings stand in stark contrast to those which attach in a civil contempt proceeding. "[C]ivil contempt sanctions . . . are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." Bagwell, 512 U.S. at 827.

[10] Because we answer this question in the negative, resolution of the other issues raised by the petitioner in her petition is pretermitted. We express no opinion about trial court bias, the procedure used by the trial court during the contempt hearing, or the role of Husband's lawyer as the private prosecutor.

limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings.

Id. (quoting Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 800 (1987)). Despite imprecise language in prior Tennessee appellate decisions, a person found in contempt pursuant to Tennessee Code Annotated section 29-9-102 has not been "convicted" of a criminal offense for purposes of the Post-Conviction Procedure Act. Rather, section 29-9-102 defines the circumstances that authorize courts to "inflict punishments" for contempt. Courts properly "find" or "hold" persons in contempt and impose "sanctions" or "punishment" for contempt but do not "convict" persons of contempt. See, e.g., Long v. McAllister-Long, 221 S.W.3d 1, 12-13 (Tenn. Ct. App. 2006) (discussing "sanctions" available for criminal contempt and recognizing that persons accused of criminal contempt "may not be *found* to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order" (emphasis added)); State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust, 209 S.W.3d 602, 611-13 (Tenn. Ct. App. 2006) (discussing the "sanctions" available to a court to punish for contempt).

In contrast, *post*-conviction relief, by its very nature, presupposes the existence of a conviction for a criminal offense. Black's Law Dictionary defines "conviction" as follows: "The act or process of judicially finding someone guilty of a crime; . . . [t]he judgment (as by a jury verdict) that a person is guilty of a crime." Black's Law Dictionary 384 (9th ed. 2009). Thus, a "conviction" cannot be based on conduct that does not violate one of the general criminal laws of this State. Criminal offenses are defined by the General Assembly, State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996), which has declared that "[c]onduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute," Tenn. Code Ann. § 39-11-102(a) (2010).

The Legislature's enactment of other statutes defining certain types of contemptuous conduct as criminal offenses supports our conclusion that contempt findings pursuant to section 29-9-102 should not be viewed as criminal convictions for purposes of the Post-Conviction Procedure Act. See Tenn. Code Ann. § 36-5-104; Brown, 914 S.W.2d at 888 (recognizing that the failure to comply with a court order to pay child support is both contemptuous behavior and a criminal offense under Tennessee Code Annotated section 36-5-104(a)). Similarly, the Legislature has enacted statutes defining jury tampering and failure to appear as criminal offenses, see Tenn. Code Ann. §§ 39-16-509, -609 (2010), even though this conduct is also subject to general contempt provisions, id. § 29-9-102(3), (5) (2012).

These examples indicate that, had the Legislature intended for general criminal contempt to also constitute a criminal offense for purposes of the Post-Conviction Procedure Act, it would have so provided, as it has in other instances.[11]

Post-conviction relief, by its very definition, is a remedy for seeking relief from convictions of criminal offenses. It is not available to challenge findings of general criminal contempt arising from civil cases. Rather, the Tennessee Rules of Civil Procedure provide the avenues for seeking relief from judgments in civil cases. See Tenn. R. Civ. P. 59, 60; Discover Bank v. Morgan, 363 S.W.3d 479, 488-89 (Tenn. 2012).

**Conclusion**

The plain language of the Post-Conviction Procedure Act provides a mechanism for seeking relief from criminal convictions. A finding of criminal contempt pursuant to Tennessee Code Annotated section 29-9-102 is not a criminal conviction. Thus, the petitioner was not entitled to seek post-conviction relief from the criminal contempt findings in the Agreed Order. We affirm the judgment of the Court of Criminal Appeals affirming the trial court's dismissal of the petition for post-conviction relief. Costs of this appeal are taxed to Tracy Rose Baker, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE

---

[11] Our conclusion that findings of criminal contempt are different from convictions of general criminal offenses is further buttressed by the distinction drawn in the Tennessee Rules of Appellate Procedure between a "final judgment in a criminal contempt" proceeding and "any judgment of conviction" in criminal actions. Tenn. R. App. P. 3(b). An appeal as of right is available in both instances; however, criminal contempt is listed separately from the general category of criminal actions. An important canon of statutory construction counsels that a statute (or rule in this case) should be interpreted to preclude any part from being "inoperative, superfluous, void or insignificant." Tidwell v. Collins, 522 S.W.2d 674, 676-77 (Tenn. 1975); see also State v. Morrow, 75 S.W.3d 919, 921 (Tenn. 2002). If criminal contempt were considered part of the general category of criminal actions for which a judgment of conviction is entered by a trial court, then it would be superfluous to list it separately among other collateral, quasi-criminal orders from which an appeal as of right may be taken.